That's case number 237466, 2939, LLC at all versus Continental Indemnity Company. Mr. Shapiro? Good morning, may it please the court, Sim Shapiro from the law firm of Strykowski-Drachman Shapiro on behalf of the plaintiff's appellants. This case obviously turns on a critical procedural issue, which is the application of race judicata to a non-defaulting party that in fact had sought to intervene in the original action. But I also ask this court to look beyond that as well. And the bigger picture, so to speak, is we had an instance here where there is, at the very core of this case, is an underlying action, Supreme Court of Kings County, with a judgment for $21 million. During which a declaratory judgment action was commenced by the insurer for the third party defendant in that action. The insurer for the defendant third party plaintiff in that action was not named as a party, nor were there insurers named as a party to this declaratory judgment action that was commenced by Continental Indemnity, sought to intervene. And the argument made successfully by Continental in that action, the one before Judge Furman, was in fact that this will not impair your rights. And in fact, that was the ruling from- Go ahead and finish your thought. This will not, and that was in fact the ruling from Judge Furman. Well, at the time that you were in front of Judge Furman, you being the owners or the representatives of the owners were sued under the labor law claim by Mr. Wang. Wang's case had not come to judgment, right? It had not yet at that time, it has now. So, because of Labor Law 240, you were sued as owner, and you'd commenced a third party action in which you brought Mr. Bolson's company in seeking indemnification from him if you were cast in liability, correct? Correct, both common law and contractual. And so, your liability at the time that you were in front of Furman as to, or your ability to seek contribution from Mr. Bolson's company and or his carrier was contingent upon a determination, A, of your liability in the state court action, and B, your success if that occurred on an indemnification claim, correct? That is correct. And so, Furman was correct to characterize your liability as contingent at that moment in time. At that point in time. I'll point out those contingencies have been met.  And so, therefore, you weren't in privity. Your rights and Bolson's rights were not the same. You didn't stand in the shoes of Mr. Bolson or Bolson stand in your shoes at the time you were in front of Furman. At that time, I'm sorry. Nor did you when you were in front of Judge Kovner, did you? Because at the time that you sued for a declaratory judgment as to seeking that you were entitled to coverage from Continental, the judgment had not been entered in state supreme court yet, even then, had it? It had not. All right, but that judgment then crystallized your interest in recovering against Bolson and or his carrier, and under 3420 of the New York insurance law, you're entitled to assert his rights. Yes, your honor. And your argument is that Judge Kovner's determination, A, that you were in privity at the time in front of Furman was wrong. She asserted that your rights were the same as Bolson's. Your interests were the same. That's wrong. because they hadn't been determined yet. And that they were only crystallized at the time, ultimately, you were cast as liable and seeking indemnification, is that right? Correct, and it was before her ultimate ruling. It was during the pendency of that action, but before her ultimate ruling, that the judgment was entered, and in fact not pending. From my perspective, one more question, and I'll ask, and I'll be quiet. I'll let my colleagues ask if they wish. Did you also sue, I didn't see that you did, but did you also sue as a court an additional insured, seeking status as an additional insured under the continental policy? We did not, your honor. And the reason for that, I think. I have some familiarity with some of these labor law cases from prior experience. A lot of times, owners would seek, would have arrangements with general contractors or subs. Requiring them to be named as an additional insured on any liability policies issued. And I note in your brief, you talk about the rights that you had, other rights that you had, but I didn't see you characterizing those as such. That is correct, your honor. And the reason for that is here, in this particular case. This particular policy is a, what's known as an employer's liability or 1B policy, which generally do not provide for additional insured coverage. The type of liability here was common law indemnity. We had a situation where there was, under New York Law Workers' Compensation Law section 11, a grave injury. There's really no dispute about that in the underlying action. It was a really severe, horrific injury. And so because of that, in terms of this particular policy with continental indemnity, the issue of additional insured status was not an issue for this case. Okay. How do you address, it seems like somewhat broad language by the Court of Appeals in Dorado, that says that the inevitable consequence of the election to proceed against the defendants under insurance law 3420. Is that the third party there was in legal privity with the claim to insured. It seems to suggest that the question of privity doesn't go to whether you're in privity at the time of the preceding action. But at the time of the subsequent action, which runs afoul of general principles, but it's the Court of Appeals. Well, I will point out that Dorado talked about collateral estoppel, issue preclusion, not res judicata, which is claim preclusion, which is the issue we have here. So that, right, is a starting point. There's no discussion there where we have a default judgment against a party. And here we have a separate and distinct party that wasn't part of the default, and again, as I pointed out, actually tried to intervene in the original action and was denied the intervention. Dorado does not talk about a case like that. In fact- And privity is broader in the collateral estoppel context than-  When Dorado's, Dorado's a case where a shop owner is shot by a guy by the name of Luke. And he, and the shop owner sues Luke and Luke's family for, and he characterizes Luke's actions as negligent. And he characterizes the family's actions as negligent entrustment. It's the family's homeowner's policy that he sues. The homeowner's policy covers the family for their responsibility. But Luke defaults in Dorado's suit against him, okay? And then Luke's, then Dorado's convicted for the criminal assault. And the New York Court of Appeals says, well, wait, you know, Luke's been found to have acted intentionally, and so therefore Dorado's precluded from this. And even though Luke had defaulted in his, I mean, it's curious. I think Dorado actually stands for the contrary principle than what Judge Kovner found. because Luke had defaulted. If Luke's default, I think, had somehow bound Dorado, Dorado would have been more than happy to have been bound by that. That may very well be. And that's what he argued to the New York Court. And I do realize I'm out of time, so I'll just very quickly point out that Dorado also, there there was an issue of intentional act that was actually decided. In fact, the issue there was actually litigated, which is a term that's used in a number of cases. But mindful that I'm out of time, unless the court has other questions for me, I'll defer to my colleague and await my rebuttal. I actually have one. Judge Lyman, were you going to? No, I don't. Okay, I have one more question. So if we agree with you that there's no privity, then I guess you'll go back on remand and you'll argue that CIC has to pay under the insurance contract. Isn't that exactly what Judge Furman has decided in the default judgment? And isn't that what race judicata is supposed to prevent? Race judicata is not, there's not an instance where race judicata would apply to a non-defaulting party, such as my clients here, that would have an impact there. And I will point out also, and I cited to it in a couple of the, in a number of cases- So CIC's obligation to a third party may be different than its obligation to the insured? As an indemnity, yes. So I would argue that in fact, and in fact that's what the cases say, that it would not be binding on a party like mine, which essentially, a client like mine, essentially a judgment creditor. Well, the issue you litigate is coverage, initially. Correct. The default was on the coverage issue. So what you want to do is have the opportunity to claim that Bolson's non-cooperation didn't negate the policy. Yes, and I would point out that, as your honor alluded to, the issue here is a dismissal motion. Ultimately, the merits will be decided on the case. What we're seeking here is this reversal of the judgment in favor of the defendant, which was on a motion to dismiss. So that underlying action has not been litigated as yet. Okay, thank you counsel, you have a couple of minutes for rebuttal. Mr. Rosado. Good morning, your honors. May it please the court. My name is Steven Rosado. I am here on behalf of the defendant, Appley Continental Indemnity Company. Pull the mics down to us here, thank you. I'm a little height challenged, so. No, no, that's okay. So we can lower, if you want, we can lower the stand. Can you hear me? Yeah. Okay. Chance. There we go. All right, so I want to start with three undisputed issues in this, undisputed facts in this case that Judge Kovner correctly determined that require affirmance on appeal. First one is, in Continental's 2020 action against Bolson, before Judge Furman. Judge Furman entered a default judgment against Bolson, finding Bolson liable to Continental for fraud. Finding that Continental was defrauded by Bolson. But there's no claim that the policy was void. In fact, your client explicitly said the policy is not void. We're not seeking to void the policy based on a misrepresentation, correct? That's correct, your honor. It's specific to this employer's liability insurance claim that was made by Bolson. Continental has, in fact, paid all the workers' compensation benefits to Mr. Wong to the tune of $2 million. That's the damages that were awarded to Continental in the action before Judge Furman. Now, Bolson did appear in that litigation and tried and moved to vacate the default judgment. Judge Furman had the opportunity to not reach the merits and say that Bolson had willfully defaulted, could have denied their motion to vacate on that basis. He could have said that Continental was prejudiced. He could have declined to reach whether they- It wouldn't create a collateral stop, it wouldn't create race judicata, would it? Under a decision, I mean, doesn't it avoid the problem of the default judgment because the standards are very different under Rule 55, aren't they? For said vacated default judgment, and on review, it would be an abuse of discretion. So that's correct, it would be an abuse of discretion under Rule 55, but one of the prongs, of course, on a motion to vacate is whether there's a meritorious defense. And Bolson tried to present evidence that they had not, in fact, defrauded Continental. And Judge Furman rejected all of those arguments. They went back, then Bolson, which had appeared in the action before Judge Covenant, this was all going on at the same time, and said, we've elected not to appeal that. They elected, they consciously chose not to appeal Judge Furman's ruling, that they had no meritorious defense. Well, stop for a second. What was the plaintiff's interest in Bolson's coverage in front of Judge Furman? They were contingent, weren't they? That was our argument. Well, don't tell me what your argument was. Tell me whether you think they were contingent or not. At the time, their interests in the policy were indeed contingent. Yeah, you were right. I happen to think you were right. And why were they contingent? Because there was no judgment against the owners at that point in time in state court with regard to Wang's injuries, was there? The trial was going to occur in state court, and a jury could have concluded that the owners were not liable under the labor law because a safe workplace had been provided to Wang, correct? Correct. Or in the alternative, they could have decided, well, the owners are liable, but Contractor X or, not Employer X, Contractor X, Contractor Y, Contractor Z contributed to Wang's injuries. And therefore, if there were third party claims to them, they're liable. Or it could have concluded, if there were a claim against Bolson, as there was by the owners, that Bolson was solely responsible for Wang's injuries, correct? Correct. But those were all yet to be determined, is that correct? Yes, Your Honor. And so at the time that Bolson's coverage was denied or determined by default, that he didn't have coverage, that Continental was correct in denying him, the owner's interest in that coverage had not materialized, had it? Well, Your Honor, I would disagree with that. Answer my question. The answer is no, I would disagree. They filed their complaint on December 14th. They tried to avoid federal jurisdiction. You just told me it was contingent. Now, was it contingent or had it materialized at the time that Bolson defaulted? There were contingencies. Therefore, it did not exist. It depended upon other acts, correct? Correct, Your Honor. Then how then, how then, are the owners imprivity with Mr. Bolson such that his default collaterally stops them from ultimately determining after they pay the judgment and they stand in the shoes of the insurer to raise that claim? Well, I want to leave the question- Just tell me how they can do that. So let me, before I get to the privity point, I want to just lay out for the court specifically what we're talking about here, okay? Leave aside the privity point, the res judicata. The case law is very clear. This court's decision in the Continental Insurance Company versus Atlantic Casualty Insurance Company case, and in the Lange case, which by the way are not cited in the appellant's briefs, not cited in the appellant's briefs. And what do they say? They say very clearly, a plaintiff proceeding under section 3420 has rights no greater or no less than the rights of the insured under the policy. That's not what we're talking about. What we're talking about is the right of the third party to have that question litigated.  It's not the question of whether there are greater rights or lesser rights. It's the independent right of the third party to be heard. So the point though is, your honor, Bolson's rights under the policy have been determined. There's been a judgment entered. There was no appeal taken from that judgment. It was found that Bolson had no meritorious defense to the claims that were asserted. So what would you have the plaintiff here have done? Appeal the Judge Furman's decision? I think we just established that Judge Furman's decision was correct. And what you would be doing is establishing a rule of law that would saddle this court with all kinds of appeals by parties who are denied the right to intervene. Your client could have, if your client wanted peace vis-a-vis the plaintiff here, your client could have brought them into the case in front of Judge Furman, correct? My client was not obligated to, and that's very clear. There's litigation, insurance coverage litigation, where there are potentially third parties who might have an interest down the road. All the time, between insured and insured, that's just standard practice. And we've cited multiple cases for the court, and they haven't cited one, where courts have, there's been a judgment entered against the insured and in favor of an insurer in a coverage action. And they say, I'm sorry to these third parties, but there's already a judgment. So what they're asking the court to do is now reopen all of the findings. This case is not just about Judge Kovner and what was determined there. They want to overturn everything that Judge Furman did in that case and render it a nullity. There was an opportunity to appeal the refusal to vacate the default judgment in that case. There was an opportunity to seek this court's review and say, well, they made a colorable argument that there's some meritorious defense here. It wasn't done. I'm sorry. You're saying that the plaintiff here could have raised with this court, Judge Furman's decision that there was a meritorious defense. How does the plaintiff here overcome the obstacle that it was denied intervention? They could have appealed that ruling, in fact. But what if that decision was right because their rights were contingent? They hadn't been cast in liability yet. They had no position to say that they had a right to recover against Bolson yet. Our jury had not decided that. The issue was not- It was recent. Your Honor, respectfully. So what we should do is we should write a case that says, well, if you're sued and you might have a claim for contribution, you must then assert your claims if the insured, if the insured is disclaimed against and the insured raises or has a litigation with its carrier. You must intervene. Is that what we should say? No, Your Honor. And the order on the intervention- Why don't we adopt the way you defended it in front of Judge Furman and say Judge Furman was right? These were contingent, and so therefore, they had no reason to know at that point in time. All they would do is clutter up the litigation with what ifs. So, Your Honor, how does the, my problem- It's curious that somehow Bolson's fault suddenly that was, and their interest in it was contingent, suddenly becomes binding on them. Once a jury then decides that they do have liability and they ought to seek coverage for indemnification for Bolson, they've lost their opportunity. So, what I would say is- What would you have them do, what you would do if you were in their shoes? What I would do? Yeah. This is an issue over insurance money and who's going to pay, right? There's insurers on that side of the table. You know that's what this is about. It's not about whether Wong is going to get his judgment. He got his judgment. So, what I would say is, there's been litigation here. What Your Honor is suggesting is that- Your Honor, now, let me ask you a question. All right. You represent an owner who's been sued under 240 of the labor law, and your general contractor calls you up and says, I got bad news. My carry is just disclaimed because he claims I've misrepresented my coverage. And I'm about to sue him. What do you advise your client to do? If there's been a disclaimer- You represent the owner's general liability policy. There's, at the time when there's no judgment, there's nothing to do at that point. If there's going to be litigation between the insurer and the insured- I just heard the hypothetical I said, and the general contractor's about to sue his carrier for a declaration of coverage. What do you do? And I'm in the position of which party? You're representing the owner's carrier. I would make the same arguments that I did in this case, which is, you don't have a right to sue at this point when there's been no judgment. You don't have a right to sue. Right. Okay. And it doesn't, but the point is- But you'll be collaterally stopped when you lose a lawsuit that you're not president. Your Honor, respectfully, when you come to assert your rights as a section 3420 plaintiff, you come to that, whatever the rights are of the insured at that time, you have to take them as they lie. And so, if there had been coverage litigation before that you were not a party to- So it's a question of the statute, not issue of preclusion. I would argue to your honor, and we've said that. We've said that from the beginning. So there's a couple things that I just want to make very clear. The complaint here, we made a couple arguments. One was, to the extent that they are coming to stand in the shoes of Bolson and assert rights that Bolson might have under the policy, they don't have the ability to do that. Because Bolson, there's no dispute in this case. The judgment that was entered against Bolson is res judicata as to Bolson. I don't think there's any dispute. No doubt, no doubt. The second piece of it is, well, to the extent that they're coming and saying that we have our own independent rights to argue coverage under the policy, that's barred by 3420. And so that's the problem. Because you say the 3420 right is determined at the time that they then seep. Correct. That their claim of indemnification matures. Correct. So there's 3420, there's conditions precedent to suing. And what's your best case for that? I would say the Lange case, your honor. Lange. Lange. Lange versus Hanover Insurance Company. This court's decision in the Continental Insurance case, that's 603 F 3rd 169. And do you have- Why isn't the MB AIC case controlled here? That's going to say 3420 plaintiffs. You're talking about the 1967 Court of Appeals case? Yeah, your honor, a couple things on that. And actually, this applies to that whole line of cases that the plaintiffs are citing. Number one, in all of those cases, the defaulted insured never appear in the action. So that's one. But the other is, in those cases, turned on a privity analysis, really. And one of the things in those cases, so that's not the situation here. Bolson appeared, they had an opportunity to argue the merits of our claims, of Continental's claims against them, and they lost on that issue. So it wasn't the same situation. Second, in MB AIC- I mean, okay, I understand your argument, I won't keep going. So one other thing on MB AIC. And it's very clear in the text of the decision itself. The insured in that case actually had no interest or incentive. It says that, I can read you the quote. Had neither interest nor incentive to contest national's disclaimer. Right, right, he just turned and looked. Because all New York insurance companies have to ish, well MB AIC always stands by any insurance company disclaimer. That's correct, and so he didn't care because he's going to get his money one way or the other. And so it didn't really matter. Curiously, he didn't even seek any judification about the denial of coverage by the guy who hit him. He turned to his own situation and thought that the reimbursement there. Right, and so the Zimmerman case, this first department case from about 20 years ago, that's the other, I think, key case that the plaintiffs cite. That was another one where the court, the first department even said, they called it the peculiar procedural circumstances of the case. Where there had been no appearance from the insured in that case. And so this is, leave aside whether the plaintiffs are correct, that there's some carve out in 3420 for default, or excuse me. Some carve out in the general rule that res judicata, that default judgments are res judicata as to future litigation when you're dealing with a third party coming in and seeking coverage under insurance policy. We don't agree with that. I think there are plenty of circumstances where a default judgment could be res judicata as to other third parties. But we just don't have that situation here. The court doesn't need to make some broad pronouncement. I mean, sorry to push on this, but there's one judgment in this case. That's the judgment that was entered on default, correct? Then what Judge Furman did, is he issued an order that denied the motion to vacate the judgment. You're here arguing that the judgment that was obtained by default is the one that should be accorded, that bounds the plaintiff here. Not Judge Furman's subsequent order. Right, but the order, I would say, Your Honor, because the motion to vacate was timely made within a year of the entry of the default judgment. I mean, that order would be merged into the judgment itself. You're asking somebody to reopen based on an argument that you have meritorious defenses to these claims. And the court says, on the merits, no you don't. I think that's worthy of consideration. Now, I mean, Your Honor may be right that there's, because of the procedural circumstances, a little bit different standard, as you said, abuse of discretion, but that was a merits ruling. I mean, a lot of the arguments that are being presented here, particularly the one that they're asking the court to certify to the New York Court of Appeals, is precisely the argument, precisely the issue that Judge Furman decided on the motion to vacate. And that was never appealed from. And so we've got, this case is, to me, I mean, if you look at the record of it, and I've been living it for almost five years. It's incredibly convoluted and chaotic, I think are really two words. That's an understatement. I mean, that's probably an understatement. I mean, I'd have a number of other words for it, but there were a number of opportunities along the way. But you paid $5 million. I'm sorry? I mean, I think back to my old trial with Judge States. You actually paid $5 million on the $21 million, you guys did. No, Your Honor, we did not. We haven't paid any. We have not paid any on the $21 million, Judge. The only thing, we've treated, and I said this before. You paid on the workers' comp. On the workers' comp side of it, yes. We have paid it. Wayne's injuries were catastrophic. Yes, and he's gotten his workers' comp, those are still being paid, Your Honor. This is a different issue. We're dealing with the employer's liability. No, I have no doubt. And so if there's nothing further.  Thank you. Your rebuttal. Once again, may it please the court. Just very briefly, there are a number of cases that address, in the context of 3420, that there has to have been, that the matter had to have actually been litigated. And I'll point out, for example, Zimmerman, which my colleague just referenced, it pointed out, in this case, I'm quoting, however, neither collateral estoppel nor race judicata apply as the declaratory judgment resulted from skate key's default, and there is no legal privity between plaintiff and skate key. There are a number of other cases that we cite too that point out, ultimately race judicata should not be used to deprive a party of an opportunity to be heard, and in this particular case, where that party actually sought to intervene. That intervention was opposed. They didn't have to oppose it. Your Honor had asked the question, did they have to oppose it, and they chose to oppose the intervention. There's no obligation to do so. They chose to do so. They chose that path. So they shouldn't be able to gain the benefit of it, especially when Judge Furman explicitly ruled that the ruling would not impair the interests of the plaintiff's hearing. And unless the court has any additional questions for me, we'll defer to our brief. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.